NOT FOR PUBLICATION                                                                 (Docket No. 43)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                    :
ROMAN RESTORATION, INC.,      :
                                                    :
                  Plaintiff,          :          Civil No. 07-2991 (RBK/JS)
                                                    :
                v.               :          **OPINION**
                                                    :
OPERATIVE PLASTERERS' & CEMENT :
MASONS' INTERNATIONAL          :
ASSOCIATION OF THE UNITED      :
STATES AND CANADA LOCAL #8 and :
JOHN DOES #1-100,                     :
                                                    :
                  Defendants.    :
_____:

**KUGLER**, United States District Judge:

       The case arises out of a labor dispute between Plaintiff-contractor Roman Restorations and Defendant-union Local 8 under the Labor Relations Management Act (LMRA), 29 U.S.C. § 187, and the National Labor Relations Act (NLRA), 29 U.S.C. § 158. Presently before the Court is a Motion for Summary Judgment (Docket No. 43) by Local 8. The Court heard oral argument on the Motion on March 31, 2010. For the reasons expressed on the record, and for the reasons expressed below, the Motion is granted.

**I.      BACKGROUND**

       Plaintiff Roman Restorations is a nonunion contractor who performs Exterior Insulation Finish System (EIFS) and plastering work for general contractors in New Jersey, Pennsylvania,

and Delaware. Defendant Local 8 is the labor organization for plasterers and cement masons in parts of, among others, New Jersey and Pennsylvania. In a nutshell, general contractors contract with Roman to perform EIFS or plastering work. If the contract does not require union labor, Roman performs the work using its own employees. If the contract requires union labor, Roman subcontracts with subcontractors (subs) with collective bargaining agreements with Local 2, who seemingly has an area and job jurisdictional overlap with Local 8. This means Local 2 performs some of the same work as Local 8 in some of the same geographic areas.

At issue here is Local 8's alleged conduct at thirteen different job sites,[1] eleven of which were alleged in the Complaint, and two of which were raised in Plaintiff's answers to interrogatories. Plaintiff generally claims that at each of these job sites, Local 8 would approach the general contractor and threaten to picket if the general used (or continued to use) Roman Restoration, and/or Local 8 picketed or threatened to picket the subcontractor Roman had hired for the job. Local 8 only actually picketed at three job sites. Exactly what Local 8 did at each job site is unclear. As to direct evidence of impermissible conduct, Plaintiff's most compelling evidence comes from the deposition excerpt from Peter Rocko, the owner of United Exterior Improvements, a subcontractor with whom Roman does business. Mr. Rocko seemingly states that at the Wegman's-Warrington job site, Local 8 representatives–including William Taylor- Local 8 President and Business Agent–specifically told him that they were protesting against

---

[1] (1) Roebling Mansion; (2) Hun School; (3) Season's House; (4) College of New Jersey (Library and Athletic Fields); (5) Harrah's Chester Downs; (6) Aqua Pa Headquarters; (7) Garden State Race Track (Plaza Grande); (8) Wegman's-Cherry Hill, N.J.; (9) Wegman's-Warrington, PA; (10) Bank of America-Hamilton, N.J.; (11) 1021 Old York Road; (12) California Pizza Kitchen, Plymouth Meeting, PA; (13) University Crossing at Chester Commons. Locations 12 and 13 were not alleged in the Complaint.

United Exterior because of its affiliation with Roman. See Pl. br., Ex. D at 50-51:25, 1-7.[2]

Plaintiff contends that Local 8's purpose in contacting generals or subs, threatening to picket, or actually picketing was either to force Roman to become a union contractor, or to force Roman to enter into a bargaining agreement with Local 8. Compl. at ¶ 19. Perhaps some of the bad blood between Plaintiff and Local 8 stems from a suit filed in 2002 by Plaintiff's predecessor, Roman, Inc., against Local 8 in New Jersey state court alleging violations of state law. That suit was settled in 2004 without admissions of liability.

Local 8 maintains that every action it took in this dispute was for the purpose of upholding area wage standards. In brief, labor organizations are permitted to protest employers who are not meeting the area wage standard; that is, the compensation (wage and benefits) that the union has negotiated for its members. Local 8 posits that as part of its duties as a labor organization it regularly conducts checks on all job sites, union and nonunion alike, to determine if the employees are being paid the area standard. Where it finds an employer who is not meeting the standard, regardless of whether the employer is union or nonunion, Local 8 then decides whether to engage in picketing to protest the substandard wages. Local 8 contends that enforcing the area wage standards has been its only intent in every interaction with Roman, its subs, or generals. At oral argument, Local 8 further emphasized that at the job sites where it did picket, it only engaged in primary picketing.

Exactly what–if any–damages Plaintiff allegedly suffered as a result of Local 8's activities

---

[2] Notably, Plaintiff made an allegation in the Complaint that Local 8 has used threats of violence to persons or property in its campaign against Roman, however, in its answers to Local 8's Rule 56.1 statement and at oral argument, Roman admitted that it has offered no evidence to support such a claim. See Def. 56.1 stmt. at ¶ 100, Pl. 56.1 stmt. at ¶ 100 (admitted).

3

is unclear.  Plaintiff seemingly claims that it lost the value of some of its contracts and it lost the rental value of some of its equipment.  The issue of damages, however, proved moot at oral argument after Plaintiff articulated its precise theory of liability, as discussed below.

## II.	STANDARD

Summary judgment is appropriate where the court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

"[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact."  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Id.

**III.  DISCUSSION**

In support of summary judgment, Local 8 argues that Plaintiff has failed to produce evidence that its actions were a pretext for unlawful conduct.  Alternatively, Local 8 argues that even if Plaintiff has shown a genuine issue of material fact as to certain sites, the Court should grant summary judgment as to those sites where there is no dispute that Local 8 acted appropriately.  Def. br. at 5-6.

Upon the Court's review of the filings, Plaintiff's exact theory of liability was initially unclear.  On the basis of the Complaint, Plaintiff seemed to argue that Local 8 threatened or coerced generals and subs for the purpose of causing Plaintiff to become a union contractor, or to force Plaintiff off the job.  However, in response to Defendant's Motion, Plaintiff seemingly narrowed its theory of liability to argue that Local 8 violated § 158 by harassing Roman's subs, even after learning they were union subcontractors.  At oral argument, Plaintiff suggested that its precise theory of liability was that once Local 8 determined that Local 2 was being used, even after Local 8 determined that the Local 2 employees were not quite paid the area wage standards, Local 8 was prohibited from engaging in picketing.[3]  Under this theory, summary judgment is appropriate.

    **A.  LMRA/NLRA**

Under the LMRA, a person injured in his "business or property" by reasons of a violation of the NLRA, 29 U.S.C. § 158(b)(4), may file suit to recover damages.  29 U.S.C. § 187(b).  Under section 158, it is an unfair labor practice for a labor organization or its agents to "threaten,

---

[3] At argument, Plaintiff conceded that it had no evidence of unlawful conduct as to any jobsite other than perhaps Wegman's-Warrington.  At that jobsite, Local 8 admittedly engaged in picketing.

5

coerce, or restrain any person engaged in commerce . . ., where the object thereof is–forcing or requiring any person . . . to cease doing business with any other person . . . *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing[.]" § 158(b)(4)(ii)(B). It is also unlawful to threaten, coerce, or restrain where the purpose is "forcing or requiring any employer to assign particular work to employees in a particular labor organization[.]" § 158(b)(4)(ii)(D). Section 158(b)(4)(B) is known as the "secondary boycott" provision. See Taylor Milk Co. v. Int'l Bhd. of Teamsters, 248 F.3d 239, 244 (3d Cir. 2001).

The Third Circuit has described the purpose of the secondary boycott provision as follows:

> Section 8(b)(4)(ii) of the NLRA prohibiting secondary boycotts by unions essentially prohibits union conduct designed to force a primary employer (the employer with which the union has a dispute) to bargain with a union or to force a neutral employer (an employer with which the union has no dispute) to cease doing business with the primary employer. The proscribed methods used to achieve the objectives include threatening, coercing, or restraining the secondary employer. See, e.g., Soft Drink Workers Union Local 812 v. NLRB, 657 F.2d 1252 (D.C. Cir.1980). Coercion can include economic pressure upon the neutral party. Allentown Racquetball & Health Club, Inc. v. Building and Constr. Trades Council of Lehigh and Northampton Counties, 525 F. Supp. 156 (E.D. Pa. 1981). The purpose of the prohibition against secondary boycotts is to shield unoffending employers from pressures in disputes not their own, though preserving the rights of unions to bring pressure to bear on offending employers in primary labor disputes. Anderson v. International Bhd. of Elec. Workers, Local No. 712, AFL-CIO, 422 F. Supp. 1379 (W.D. Pa.1976).

Taylor Milk, 248 F.3d at 244-45 (quoting Limbach Co. v. Sheet Metal Workers Int'l Assoc., 949 F.2d 1241, 1249-50 (3d Cir. 1991)).

In effect, the secondary boycott provision prohibits a union from picketing one employer where at least one of the union's purposes is to cause the picketed employer to cease doing

business with an unpicketed employer.  See Superior Derrick Corp. v. NLRB, 273 F.2d 891, 896 (5th Cir. 1960) ("If any object of the picketing is to subject the secondary employer to forbidden pressure then the picketing is illegal.").  Thus, a reviewing court is looking for evidence of pretext.  Cf. Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Local 150, 433 F.3d 1024, 1036 (7th Cir. 2006).  The court's primary focus must be on the union's actual intent, not on whether it has a general right to take the action that it did.  See Taylor Milk, 248 F.3d at 245.

Critical to this dispute is Local 8's assertion that all of its actions were for the preservation of area wage standards.  "Area standards" picketing or "area wage standards" picketing involves the union's picketing of a job site, union or nonunion, to keep union employers competitive with nonunion employers.  See Seco, Inc. v. Local 135, Laborers' Int'l Union, 515 F. Supp. 495, 499 (E.D. Pa. 1981).  Picketing of a job site where the wages paid by the employer are not commensurate with those paid by a union is lawful.  See id.

### B.   Application

Local 8 asserts that in each of the disputed job sites, any activity it took was to ensure that the employer was paying the area standards, particularly at the Wegman's-Warrington.  Plaintiff seems to counter that once Local 8 learned that Roman was using Local 2 labor, it was prevented from investigating and picketing that job site and subsequent job sites where it knew Local 2 was also being used.  See, e.g., Pl. br. at 5 ("[E]ven when [Local 8] was told that the subcontractor was Local 2, it still demanded to review wage and salary.").  Since it appears that Plaintiff's theory of liability is that Local 8 was foreclosed from investigating and picketing because Roman used Local 2, i.e., union labor, Plaintiff's case fails.

It is well-established that a union can protest area standards at a job site, *even where the*

*employer is using union labor*, assuming the protest is without an impermissible secondary purpose.  See Seco, 515 F. Supp. at 499; Electrical Workers, Local 453, 242 NLRB 1130, 1131 (1979), remanded on different grounds by, Congress of Indep. Unions v. NLRB, 620 F.2d 172 (8th Cir. 1980); United Bhd. of Carpenters, Local 480, 209 NLRB 921, 921-22 (1974).  Here, Plaintiff admits that Local 8 inquired into the wages and benefits that the Local 2 employees were receiving at the Wegman's jobsite, and those wages and benefits were seemingly less than the area standard.  See Def. 56.1 stmt. at ¶¶ 67, 70-73; Pl. 56.1 stmt. at ¶¶ 67, 70-73 (admitted).  With this information, Local 8 was lawfully permitted to picket and it did so.  Merely because the underpaid employees were union members did not transform Local 8's action into something unlawful.  Therefore, Plaintiff's case fails as a matter of law because no reasonable juror could find for Plaintiff on the theory advanced.

**IV.    CONCLUSION**

For the foregoing reasons and for the reasons expressed in the record created on March 31, 2010, Defendant Local 8's Motion for Summary Judgment is **GRANTED**.  An accompanying order shall follow.


Date:  4-1-10                                                                    /s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge